# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE MARTIN NOGALGES,<br><br>                    Petitioner,<br><br>vs.<br><br>WARDEN McDONALD,<br><br>                    Respondent. | Civil No.    11-2146 IEG (BLM)<br><br>**REPORT AND RECOMMENDATION RE:**<br><br>**(1) DENIAL OF REQUEST FOR EVIDENTIARY HEARING; and**<br><br>**(2) DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS; and**<br><br>**ORDER DENYING MOTION FOR APPOINTMENT OF COUNSEL**<br><br>**ECF Nos. 1, 7, 9** |

**I.    INTRODUCTION**

Petitioner Jose Nogales, a state prisoner proceeding pro se, has filed a Petition for Writ of Habeas Corpus (Pet.) pursuant to 28 U.S.C. § 2254, challenging his convictions in San Diego County Superior Court case number SCD208418 for two counts of second degree murder, one count of shooting at an inhabited dwelling, and two counts of unlawful possession of a firearm. Pet. at 1-6 [1], ECF No. 1; Lodgment No. 1, vol. 2 at 0561-63, vol. 3 at 0629-34. The jury also found true various gang enhancements associated with the convictions. After the

---

[1] For ease of reference, the Court will use the page numbers assigned by the Court's electronic filing system.

Petition was filed, Nogales filed a Motion to Appoint Counsel, ECF No. 7, and a Motion for Evidentiary Hearing. ECF No. 9.

This case is before the undersigned Magistrate Judge pursuant to S.D. Cal. Civ. R. 72.1(d)(4) for proposed findings of fact and recommendation for disposition. For the reasons set forth below, the Court respectfully recommends that the Petition and Motion for Evidentiary Hearing be **DENIED**. The Court also **DENIES** the Motion for Appointment of Counsel.

## II.  FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1) (West 2012); see also Parke v. Raley, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from these facts, are entitled to statutory presumption of correctness). The following statement of facts is taken from the California Court of Appeal's opinion denying Nogales's direct appeal of his convictions.

### a. The June 22, 2007 Shootings

On June 22, 2007, Karina Lopez was in a car in an alley. Lopez saw four men in the alley, one of whom was yelling at a fifth man. According to Lopez, one of the men from the group of four struck the fifth man in the head with a bottle. Lopez ducked down in the car. Shortly thereafter, she heard two gunshots.

A second witness, Ivet Sandoval, identified Carrasco in court as having been present in the alley during the June 22 shootings. Sandoval also testified that she had previously identified Nogales from a series of photographs as having been present in the alley and having fled the scene with a black gun tucked in his waistband. Carrasco's DNA was discovered on a bottle found at the scene of the June 22 shootings. Cartridge cases that matched the gun used in the murders charged in counts 3 and 4 were found at the scene of the June 22 shootings.

### b. The July 8, 2007 Shootings

Just after midnight on July 8, 2007, several members of the Perez family and their friends were standing outside the Perez home, talking. A white pickup truck passed slowly by the Perez residence, made a U-turn at a cross street, and slowly approached the Perez residence again. Inside the pickup truck were the driver and at least one passenger. As the truck approached the Perez residence, it began driving even more slowly. The driver's side of the truck was closest to the Perez residence. The driver of the truck shouted through his open window,

"Paradise Hills. Paradise Hills. P.H.." The driver also asked, "Where you from?" The driver appeared to be attempting to start a fight. Frank Perez, who was standing close to the truck, angrily responded, "Get out of here." The passenger door of the truck then opened, and the passenger began shooting at the people standing outside the Perez home. Both Frank Perez and his brother, John Perez, died from gunshot wounds to their heads.

At approximately 3:30 a.m., police saw Carrasco at a gas station standing next to a white pickup truck. Police detained Carrasco and his girlfriend, Janelle Greed, who was in the truck. Several people who had been outside the Perez residence at the time of the shootings, including Rene Perez, were taken to the gas station and asked whether they could identify Carrasco as one of the perpetrators of the Perez murders. Rene Perez told police, "Sure looks like him . . . ." A second eyewitness, Blanca Avalos, told police that Carrasco was a "good candidate."

While police were detaining Carrasco at the gas station, they learned that Carrasco had just dropped off Nogales at Nogales's apartment. At approximately 6:00 a.m. that morning, police went to Nogales's apartment, arrested him , and found the firearm that was used in both the June 22 shootings and the July 8 murders.

### c. Gang Evidence

The Paradise Hills criminal street gang has approximately 48 members. Carrasco and Nogales are active members of the gang. The July 8 murders were committed in the territory of a gang called the "Lomita Village 70s." The Paradise Hills gang and the Lomita Village 70s gang have a long standing rivalry.

### 2. The defense

Carrasco presented the testimony of several eyewitnesses who had not identified him at the gas station on the night of the murders. Carrasco also testified at trial. Carrasco admitted that he had been driving his girlfriends's mother's white pickup truck on the night of the murders. Carrasco also admitted that he was a member of the Paradise Hills gang, that he was close friends with Nogales, and that he had spent the evening of the murders with Nogales at a party. Carrasco denied having driven the white pickup truck near the time of the murders. Nogales presented no witnesses in his defense.

Lodgment No. 7 at 2-6.

## III. PROCEDURAL BACKGROUND

On April 21, 2008, the San Diego County District Attorney filed an amended information. The information charged Jose Nogales with two offenses related to the June 22, 2007 incident, one count of attempted murder, a violation of California Penal Code (Penal Code) §§ 187(a) and 664 (count one), and one count of assault with a semi-automatic firearm, a violation of Penal Code § 245(b) (count two). The information also charged Nogales with

five offenses related to the July 8, 2007 incident, two counts of murder, a violation of Penal Code § 187(a) (counts three and four), one count of shooting at an inhabited dwelling, a violation of Penal Code § 246 (count five), and two counts of illegal possession of a firearm, violations of Penal Code § 12021(d) and (e) (counts six and seven). Lodgment No. 1, vol. 1 at 0042-49.  As to all seven counts, the amended information alleged the crimes were committed for the benefit of, at the direction of, and in association with a criminal street gang, within the meaning of Penal Code sections 186.22(b)(1), (b)(4) and (f).  Id.  As to counts one and two, the amended information alleged that Nogales had personally used a firearm, within the meaning of Penal Code § 12022.5(a), had personally inflicted great bodily injury, within the meaning of Penal Code § 12022.7(a) and had committed the crimes for the benefit of, at the direction of, or in association with a criminal street gang and with the specific intent to promote, further, or assist in criminal conduct by the gang, within the meaning of Welfare and Institutions Code § 707(d)(2)(C)(ii).  Id.  As to counts one, three, four and five, the amended information alleged Nogales was a principal in the offenses, and at least one principal personally used a firearm causing great bodily injury, within the meaning of Penal Code §§ 12022.53(d) and (e)(1).  Id.  As to counts three and four, the amended information alleged Nogales was 14 years or older when he committed the offenses, within the meaning of Welfare and Institutions Code § 707(d)(2)(A).  Finally, the amended information charged the special circumstances allegations that, if convicted of counts three and four, the defendants would be convicted of more then one first or second degree murder in the same proceeding, within the meaning of Penal Code § 190.2(a)(3).  Id.

The trial court granted a motion to sever the charges related to the June 22, 2007, crimes from the charges related to the July 8, 2007, crimes.  Lodgment No. 6 at 7.  Nogales also successfully moved to have the possession of a firearm charge bifurcated from the murder and shooting at an inhabited dwelling charges.  Id.

A jury trial was held on counts three, four (the two murder charges) and five (the shooting at an inhabited dwelling charge).  Id.  During deliberations, the jury told the trial judge they were deadlocked on whether Nogales was guilty of first degree murder.  Id.  In

response, the judge granted the prosecution's request to dismiss the first degree murder charges and the special circumstances allegations. The jury thereafter found Nogales guilty of two counts of second degree murder (counts three and four) and one count of shooting at an inhabited dwelling (count five.) Lodgment No. 1, vol. 3 at 0708-10. The jury also found the gang and gun allegations true. Id. Counts six and seven (unlawful possession of a firearm) were tried to the court, and Nogales was found guilty. Id. at 0711. He was sentenced to eighty years-to-life imprisonment. Id. at 0716.

Nogales appealed his conviction and sentence to the California appellate court. Lodgment Nos. 3-5. The state appellate court affirmed the conviction but altered the court security fee imposed on Nogales. Lodgment No. 6. Nogales thereafter filed a Petition for Review in the California Supreme Court. Lodgment No. 7. The California Supreme Court denied the petition without citation of authority. Lodgment No. 8.

Nogales filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in this Court on September 18, 2011. ECF No. 1. Respondent filed an Answer and Memorandum of Points and Authorities in Support of the Answer on November 22, 2011. ECF No. 4. Nogales filed a Traverse on December 27, 2011, a Motion to Appoint Counsel on January 3, 2012, and a Motion for Evidentiary Hearing on January 19, 2012. ECF Nos. 6-7, 9.

**IV.   DISCUSSION**

   A.   Standard of Review

This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Lindh v. Murphy, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d); Early v. Packer, 537 U.S. 3, 8 (2002). In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an

extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable. Yarborough v. Gentry, 540 U.S. 1, 4 (2003); Medina v. Hornung, 386 F.3d 872, 877 (9th Cir. 2004).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. Bell v. Cone, 535 U.S. 685, 694 (2002). The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case. Id. Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision and presumes it provides the basis for the higher court's denial of a claim or claims. Ylst v. Nunnemaker, 501 U.S. 797, 805-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. See Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by Andrade, 538 U.S. at 75-76); accord Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim. Early, 537 U.S. at 8. "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" id., the state court decision will not be "contrary to" clearly established federal law. Id. Clearly established federal law, for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." Andrade, 538 U.S. at 72.

B.   Analysis

Nogales makes only one claim in his petition, that the evidence was insufficient to support his convictions for murder and shooting at an inhabited dwelling.  Pet. at 6-61. Respondent contends the state court's adjudication of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  Mem. of P. & A. Supp. Answer at 14-20.  Nogales has also asked for an evidentiary hearing in federal court and for counsel to be appointed.  ECF Nos. 7, 9.

1.   Request for an Evidentiary Hearing

Nogales contends he is entitled to an evidentiary hearing on his claim "so that this Court can fully see and comprehend . . . aspects of the case to its full potential[,] so that this Court not only read[s] the transcripts but hear[s] the evidence itself[,]" and, "so that the court may see the relevant exhibits presented that cannot be seen through the transcripts[,] . . . pictures that show the truck and pictures showing exactly what Nogales was wearing the day of July 7, 2007."  Mot. for Ev. Hrg. at 3, ECF No. 9.

Evidentiary hearings in § 2254 cases are governed by AEDPA, which "substantially restricts the district court's discretion to grant an evidentiary hearing." Baja v. Ducharme, 187 F.3d 1075, 1077 (9th Cir. 1999).  The provisions of 28 U.S.C. § 2254(e)(2) control this decision:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –
>
> (A) the claim relies on –
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C.A. § 2254(e)(2) (West 2012).

In order to determine whether to grant an evidentiary hearing, the court must first "determine whether a factual basis exists in the record to support the petitioner's claim." Insyxiengmay v. Morgan, 403 F.3d 657, 669 (9th Cir. 2005) (citing Baja, 187 F.3d at 1078). If not, and an evidentiary hearing would otherwise be appropriate, the court must "ascertain whether the petitioner has 'failed to develop the factual basis of the claim in State court.'" Id. at 669-70. A failure to develop the factual basis of a claim in state court implies "some lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." See Williams v. Taylor, 529 U.S. 420, 432 (2000). The Supreme Court has said that "[d]iligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." Id. at 437.

In the present case, a sufficient factual basis exists in the trial transcripts and other records before the Court to resolve the merits of Nogales' claim. See Insyxiengmay, 403 F.3d at 669-70. Nogales is essentially asking this Court to make a de novo factual determination on the evidence presented in state court. An evidentiary hearing is not a vehicle to re-litigate factual findings that have already been made by a jury. Accordingly, the Court recommends Nogales' request for an evidentiary hearing be **DENIED**.

2. Whether Sufficient Evidence Was Presented to Support Nogales' Convictions

Nogales claims there was insufficient evidence presented to support his conviction for murder and shooting at an inhabited dwelling. Pet. at 6, 20-60; ECF No. 1. Nogales raised the claim in the Petition for Review he filed in the California Supreme Court on direct review. Lodgment No. 7. That court denied the Petition for Review without citation of authority. Lodgment No. 8. Accordingly, this Court must "look through" to the state appellate court decision denying the claim as the basis for its analysis. Ylst, 501 U.S. at 805-06. Citing the controlling United States Supreme Court authority of Jackson v. Virginia, 443 U.S. 307, 313-24 (1979), the state appellate court denied the claim as follows:

(ii) Substantive law

"Second degree murder is the unlawful killing of a human being with malice aforethought, but without the additional elements that it be willful, deliberate and premeditated, which are required for first degree murder.

[Citations.]" (People v. Superior Court (Costa) (2010) 183 Cal.App.4th 690, 697.)

"The elements of a violation of section 246 are '(1) acting willfully and maliciously, and (2) shooting at an inhabited house. [Citation.]' [Citation.]" (People v. Hernandez (2010) 181 Cal.App.4th 1494, 1501.)

b. Application

Nogales's primary argument in support of his insufficiency claim is that there is a lack of evidence that he was present in the truck that was used in the murders at the time of the murders. While the evidence on this point is far from overwhelming, we conclude there is sufficient evidence from which the jury could have reasonably inferred that Nogales was present in the truck used to commit the murders at the time of the murders, and that he was, in fact, the shooter.

Most significantly, police found Nogales in possession of the murder weapon just a few hours after the commission of the murders. (See People v. DePriest (2007) 42 Cal.4th 1, 45 ["The jury could readily conclude that defendant had the murder weapon because he was the murderer"].) Further, Nogales's DNA was found on the murder weapon. While a second unidentified individual's DNA was also found on the gun, Nogales was the primary contributor of the DNA found on the gun. [footnote 19 omitted.] Moreover, the police found a single fingerprint on the murder weapon. That sole fingerprint matched Nogales's fingerprint. In addition, as discussed in part II.A.2, ante, the People presented evidence that Nogales possessed and fired the murder weapon during a separate shooting approximately two weeks before the murders. (See People v. Carpenter, supra, 15 Cal.4th at pp. 361-362 ["The ballistics evidence showed that the same gun was used each time, strongly indicating that the same person committed each crime. Thus, evidence that defendant was the gunman in one incident was evidence that he was the gunman in the other."].)

The circumstances under which police found the murder weapon are also consistent with Nogales's guilt. Police found the murder weapon in a pile of personal belongings, including a white t-shirt, next to a couch in the front room of Nogales's apartment, suggesting that the gun had been placed there at the same time as the personal belongings. [footnote 20 omitted.] Sara Perez, who was present at the scene of the murders, testified that she saw two figures wearing white t-shirts in the truck that was used in the murders. When police confronted Nogales and ordered him out of his apartment at gunpoint, Nogales appeared "stunned" and began to reach toward the area where police later found the gun.

Nogales claims that it is "entirely plausible" that another person gave Nogales the gun after the shooting. [footnote 21 omitted.] However, the jury could have reasonably rejected this theory in light of evidence that Nogales was, "the predominant DNA contributor to the gun," the only fingerprint found on the murder weapon belonged to Nogales, and Nogales had possessed and fired the murder weapon approximately two weeks before the murders. In any event, it is the jury's role, not the reviewing court's, to determine whether circumstantial evidence is amenable to a reasonable interpretation that suggests innocence. (See People v. Rodriguez, supra, 20 Cal.4th at p. 11 ["Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other

> innocence [citations], it is the jury, not the appellate court[,] which must be convinced of the defendant's guilt beyond a reasonable doubt"].) [footnote 22 omitted.]
>
> Nogales's possession of the murder weapon was not the only evidence of his guilt. The People presented overwhelming evidence both that the murder was committed by a member of the Paradise Hills gang (see pt. III.A.4.c, ante), and that Nogales was active in the Paradise Hills gang. A gang detective testified that Nogales was one of approximately 20 "riders," who were the most likely gang members to have committed the charged offenses.
>
> In addition, as noted in part III.A.4.c, ante, the People presented strong evidence that Carrasco was the driver of the truck used to commit the murders, and considerable evidence linking Carrasco and Nogales. Carrasco testified at trial that he and Nogales were "very close friend[s]." Nogales spent the night preceding the murders with Carrasco at Carrasco's girlfriend's house. Nogales and Carrasco also spent much of the day of the murders together. Nogales was with Carrasco at a party approximately two and a half miles from the scene of the murders on the night of the murders. Further, the People presented evidence that Carrasco left the party in a white pickup truck with two other persons near the time of the murders, and Rene Perez testified that the murders were committed by a passenger riding in a white pickup truck. Carrasco also gave Nogales a ride home from the party, after the murders.
>
> Finally, the record contains physical evidence linking Nogales to the murders. Nogales had a small amount of gunshot residue on his hand. An expert testified that a person may come into contact with gunshot residue by firing a firearm, being near a weapon that is being discharged, or handling a weapon that has been fired. Nogales's fingerprints were found on the bed of the white pickup truck driven by Carrasco, on the passenger side. The location of the fingerprints on the truck was consistent with Rene Perez's testimony that the shooter emerged from the passenger side of the truck and began shooting. While far from conclusive, this physical evidence tended to corroborate the other evidence that Nogales shot and killed Frank and John Perez. [footnote 23.]
>
> > [footnote 23: Nogales also argues that there is insufficient evidence in the record to support his conviction on counts 3, 4 and 5 pursuant to an aiding and abetting theory. In light of our conclusion that there is sufficient evidence in the record that Nogales was guilty of the charged offenses as the shooter, we need not consider this contention.]
>
> Accordingly, we conclude that there is sufficient evidence in the record to support the jury's verdicts finding Nogales guilty of two counts of second degree murder (§ 187, subd. (a)) and one count of shooting at an inhabited residence (§ 246).

Lodgment No. 6 at 44-48.

/ / /

/ / /

/ / /

The clearly established Supreme Court law governing sufficiency of the evidence questions is the standard enunciated in Jackson. The Ninth Circuit has defined the habeas standard of review for sufficiency of the evidence challenges as follows:

> In reviewing the sufficiency of evidence, [a federal court] may grant habeas relief only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. at 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); see also McDaniel v. Brown, ––– U.S. ––––, 130 S.Ct. 665, 673, 175 L.Ed.2d 582 (2010); People v. Johnson, 26 Cal.3d 557, 162 Cal.Rptr. 431, 606 P.2d 738, 750–51 (1980). In this review, all evidence must be considered in the light most favorable to the prosecution, and we presume "that the trier of fact resolved any [conflicting inferences] in favor of the prosecution." Jackson, 443 U.S. at 326, 99 S.Ct. 2781. Furthermore, "[a]fter AEDPA, we apply the standards of Jackson with an additional layer of deference" to state court findings. Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir.2005).

Ngo v. Giurbino, 651 F.3D 1112, 1115 (9th Cir. 2011).

In determining whether sufficient evidence has been presented, this Court must accept the elements of the crime as defined by state law. See Jackson, 443 U.S. at 324, n.16; Aponte v. Gomez, 993 F.2d 705, 707 (9th Cir. 1993) (stating that federal courts are "bound by a state court's construction of its own penal statutes"). Here, the state court correctly outlined the elements of the crimes of second degree murder (an unlawful killing with malice aforethought but which was not willful, deliberate and premeditated) and shooting at an inhabited dwelling (willfully and maliciously shooting at an inhabited house). See People v. Superior Court (Costa), 183 Cal. App. 4th 690, 697 (2010); People v. Hernandez, 181 Cal. App. 4th 1494, 1501 (2010).

"Circumstantial evidence alone can be sufficient to demonstrate a defendant's guilt." United States v. Cordova Barajas, 360 F.3d 1037, 1041 (9th Cir. 2004). "Although it might have been possible to draw a different inference from the evidence, [a federal habeas court is] required to resolve that conflict in favor of the prosecution." Ngo, 651 F.3d at 1114-15. see also Jackson, 443 U.S. at 326, 99 S.Ct. 2781 ("[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution"); Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995). The evidence supporting Nogales's conviction most certainly relied in large

part on circumstantial evidence. But, nonetheless, a rational tried of fact could have concluded on the basis of this circumstantial evidence, and reasonable inferences that could be drawn from that evidence, that Nogales was guilty of the murder of the Perez brothers and shooting into an inhabited dwelling.

The evidence presented at trial established the following. Carrasco and Nogales are members of the Paradise Hills gang, which has a long standing and deadly rivalry with the Lomita Village gang. Lodgment No. 2, vol. 14 at 1975-76; Lodgment No. 2, vol. 11 at 1489-90, 1506-08, 1541-57. Based on photographs submitted as evidence, and expert opinion testimony by Detective Sherman of the San Diego Police Department's Street Gang Unit, Nogales is a respected member of Paradise Hills. Lodgment No. 2, vol. 11 at 1534. Gang members gain respect from killing rival gang members. Lodgment No. 2, vol. 11 at 1495, 1512. Carrasco and Nogales are friends, close enough that Nogales spent the night before the murders at Carrasco's girlfriend's house. Lodgment No. 2, vol. 14 at 1942.

On July 7, 2007, Carrasco drove Nogales and others around in his girlfriend's mother's white truck, a Chevy Silverado. Lodgment No. 2, vol. 4 at 251, vol. 14 at 1941, 1951. They spent the day together at various parks, then went to a party in Spring Valley. Id. at 1943-50. Carrasco, a person named Alex, and one other individual left the party for about half an hour sometime between eleven and twelve o'clock that night. Lodgment No. 2, vol.4 at 262; vol. 5 at 408-11.

Shortly after midnight on July 8, 2007, members of the Perez family and their friends were standing outside the Perez family residence in Lomita Village. Lodgment No. 2, vol. 5 at 491; vol. 6 at 544. A white truck drove slowly by the Perez residence, made a u-turn at the end of the block, then slowly re-approached the residence and stopped at the driveway. Lodgment No. 2, vol. 5 at 493-94, 496-97. The occupants of the truck began yelling "Paradise Hills," and "P.H.," then asked the people in the Perez's front yard, "Where you from?" Id. at 497. When Frank Perez asked the occupants of the truck what they wanted and told them "get out of here," a person got out of the passenger side of the truck and shot Frank and John Perez in the head. Id. at 506. Rene Perez testified he could see the passenger had very short

hair. Id. at 504. The driver had a goatee and medium length hair and was light skinned. Lodgment No. 2, vol. 6 at 527. Both occupants wore white shirts. Id. at 633

Detective Sherman, a detective in the street gang unit, participated in a briefing following the murders. He heard the description of the driver involved in the Perez murders and thought it sounded like Carrasco, whom he knew from personal contacts. Lodgment No. 2, vol. 12 at 1620-22. Officers began looking for a white truck with Carrasco driving. Lodgment No. 12, vol. 13 at 1706. Officer Gregory Minter was patrolling Paradise Hills when he saw a white Chevy extended cab truck matching the description of the truck from the Perez murders at a gas station. Lodgment 2, vol. 11 at 1408-09. Carrasco was putting gas in the truck. Id. at 1410. After talking to Carrasco, Minter learned that Carrasco had just dropped Nogales off at his apartment. Id. at 1421.

Officers went to Nogales' apartment, entering with guns drawn. Lodgment No. 2, vol. 11 at 1414. Instead of coming out of the apartment as he was ordered to do so, Nogales stepped back and began to reach toward the area next to the couch. Id. at 1415. When officers subsequently searched that area, they found the gun used in the Perez murders beneath a white t-shirt. Id. at 1419; Lodgment No. 2, vol. 8 at 940. Gunshot residue was found on Nogales' left hand. Lodgment No. 2, vol. 9 at 1188.

Carrasco and Nogales were suspected in a shooting that occurred about two weeks earlier on June 22, 2007. Ivet Sandoval identified Carrasco as one of the individuals involved in that shooting, and DNA evidence definitively linked Carrasco to a broken bottle found in the alley where the shooting occurred. Lodgment No. 2, vol. 10 at 1373. Sandoval also tentatively identified Nogales as the individual who ran from the scene with a gun in his waistband. Lodgment No. 2, vol. 10 at 1242 . Casings found at the June 22, 2007 shooting and the July 7, 2007 murders established that the same gun was used in both crimes. Id. at 1334-35. DNA found on the gun belonged to Nogales, and Nogales' fingerprints were found on the gun, the magazine and the outside of the white truck. Id. at 1351-52; Lodgment No. 2, vol. 9 at 1127-33.

Carrasco and Nogales' friendship, their membership in the Paradise Hills gang, and

Nogales' presence at the June 22, 2007 shooting with Carrasco could have led a rational jury to conclude that Nogales was the person who left the Spring Valley party around the time of the Perez murders. Nogales' membership in the Paradise Hills gang, as well as the expert testimony which established that gang members gain respect and stature in the gang by killing individuals in Lomita Village, could have led a rational jury to conclude Nogales had a motive to travel to rival gang territory and murder the Perez brothers. Nogales' fingerprints on the white truck, his possession of the murder weapon two weeks before the murders and hours after the murders, the gunshot residue on his hand, the presence of his DNA on the gun, and his attempt to reach for the gun — which was concealed in a white shirt, the same color worn by the shooter — when confronted by the police in his apartment could have led a rational jury to conclude he was the person who shot the Perez brothers.

It is true, as Nogales argues in his Petition and supporting documents, that different conclusions could have been drawn from the evidence. The jury could have concluded that another individual left the party at the time of the Perez murders with Carrasco and Alex in the white truck. The jury could have believed that Janelle Greed had the keys to white truck the entire time and that Carrasco and Nogales did not leave the party at all. The jury could have concluded that Nogales' fingerprints on the gun and the gunshot residue on his hand were the result of his handling the gun after the shooter gave him the gun to him for safe keeping. But these are factual determinations that are the jury's province, and not the province of a federal court on habeas review. "[U]nder the deference required by AEDPA, the only relevant question is whether the Court of Appeal's conclusion that sufficient evidence supported [Nogales'] conviction was 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Fuentes v. Gonzalez, 2011 WL 5289467 at *3 (9th Cir. Nov. 4, 2011)[2] quoting Harrington v. Richter, 131 S.Ct. 770, 786–87 (2011). The evidence presented, though circumstantial, was sufficient to lead a rational jury to conclude that Nogales committed an

---

[2] 9th Cir. R. 36-3 permits the citation of unpublished dispositions issued on or after January 1, 2007.

unlawful killing with malice aforethought but which was not willful, deliberate and premeditated, and that he willfully and maliciously shot at an inhabited house. See Costa, 183 Cal. App. 4th at 697; Hernandez, 181 Cal. App. 4th at 1501. Accordingly, the state court's decision upholding the verdict was not unreasonable and Nogales is not entitled to habeas relief. Williams, 529 U.S. at 412-13.

3. Denial of Motion for Appointment of Counsel

Nogales has requested appointment of counsel to pursue this petition. ECF No. 7. The Sixth Amendment right to counsel does not extend to federal habeas corpus actions by state prisoners. McCleskey v. Zant, 499 U.S. 467, 495 (1991); Chaney v. Lewis, 801 F.2d 1191, 1196 (9th Cir. 1986); Knaubert v. Goldsmith, 791 F.2d 722, 728 (9th Cir. 1986). However, financially eligible habeas petitioners seeking relief pursuant to 28 U.S.C. §2254 may obtain representation whenever the court "determines that the interests of justice so require.'" 18 U.S.C. §3006A(a)(2)(B) (West 2010); Terrovona v. Kincheloe, 912 F.2d 1176, 1181 (9th Cir. 1990); Bashor v. Risley, 730 F.2d 1228, 1234 (9th Cir. 1984). The interests of justice require appointment of counsel when the court conducts an evidentiary hearing on the petition. Terrovona, 912 F.2d at 1177; Knaubert, 791 F.2d at 728; Rule 8(c), 28 U.S.C. foll. § 2254. The appointment of counsel is discretionary when no evidentiary hearing is necessary. Terrovona, 912 F.2d at 1177; Knaubert, 791 F.2d at 728.

This Court has recommended that Nogales' motion for an evidentiary hearing be denied. Accordingly, that ground cannot form the basis for granting Nogales' motion for appointment of counsel.

With regard to discretionary appointment of counsel, the Ninth Circuit has stated that, "[i]ndigent state prisoners applying for habeas relief are not entitled to appointed counsel unless the circumstances of a particular case indicate that appointed counsel is necessary to prevent due process violations." Chaney, 801 F.2d at 1196; Knaubert, 791 F.2d at 728-29. A due process violation may occur in the absence of counsel if the issues involved are too complex for the petitioner. In addition, the appointment of counsel may be necessary if the petitioner has such limited education that he or she is incapable of presenting his or her

claims. <u>Hawkins v. Bennett</u>, 423 F.2d 948, 950 (8th Cir. 1970).

The issues in the present case are not too complex for Nogales. He has sufficiently represented himself to date, and has a good grasp of his case and the legal issues involved. The Petition in this case was pleaded sufficiently to warrant this Court's order directing Respondent to file an answer or other responsive pleading to the Petition. As the court in <u>Knaubert</u> noted: "unless an evidentiary hearing is held, an attorney's skill in developing and presenting new evidence is largely superfluous; the district court is entitled to rely on the state court record alone." <u>Knaubert</u>, 791 F.2d at 729. Id. (citing <u>Sumner v. Mata</u>, 449 U.S. 539, 545-57 (1981), and 28 U.S.C. §2254(d)). Moreover, "[t]he procedures employed by the federal courts are highly protective of a pro se petitioner's rights. The district court is required to construe a pro se petition more liberally than it would construe a petition drafted by counsel." <u>Knaubert</u>, 791 F.2d at 729 (citing <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972) (holding pro se complaint to less stringent standard) (per curiam)); <u>Bashor</u>, 730 F.2d at 1234.

For the above-stated reasons, the "interests of justice" in this matter do not compel the appointment of counsel. See <u>LaMere v. Risley</u>, 827 F.2d 622, 626 (9th Cir. 1987). Accordingly, Petitioner's request for appointment of counsel is **DENIED**.

### IV. <u>CONCLUSION</u>

The Court submits this Report and Recommendation to United States District Judge Irma E. Gonzalez under 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(d)(4) of the United States District Court for the Southern District of California. For the reasons outlined above, **IT IS HEREBY ORDERED** that Petitioner's Motion for Appointment of Counsel, ECF No. 3, is **DENIED**.

Further, **IT IS HEREBY RECOMMENDED** that the Court issue an order: (1) approving and adopting this Report and Recommendation, (2) **DENYING** Petitioner's Motion for an Evidentiary Hearing, ECF No. 7, and (3) **DENYING** the Petition for Writ of Habeas Corpus, ECF No. 1.

**IT IS ORDERED** that no later than **March 14, 2012** any party to this action may file written objections with the Court and serve a copy on all parties. The document should be

captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **April 4, 2012**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED: February 22, 2012

BARBARA L. MAJOR
United States Magistrate Judge