1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# SOUTHERN DISTRICT OF CALIFORNIA

10

11  JOSE MARTIN NOGALES,

12                                        Petitioner,

        vs.

13

14  WARDEN McDONALD,

15                                        Respondent.

CASE NO. 11cv2146-IEG(BLM)

Order Rejecting Petitioner's Objections to Magistrate Judge's Report and Recommendation; Denying Petition; Denying Motion for Evidentiary Hearing; Denying Motion for Appointment of Counsel; Granting Certificate of Appealability

16        Petitioner Jose Martin Nogales, a state prisoner proceeding *pro se*, has filed a petition for a

17  writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his September 16, 2008

18  convictions for second degree murder and related charges in San Diego County Superior Court

19  Case No. SCD208418.  Petitioner makes only one claim in his petition – that the evidence was

20  insufficient to support his convictions for murder and shooting at an inhabited dwelling.

21        After full briefing, Magistrate Judge Barbara Major issued a report and recommendation

22  ("R&R"), recommending that the Court deny Nogales' motions for appointment of counsel and for

23  an evidentiary, and deny the petition.  [Doc. No. 10.]  Nogales has filed objections.  [Doc. Nos. 16

24  and 17.]  Following *de novo* review, for the reasons explained herein, the Court rejects Nogales'

25  objections to the R&R, denies Nogales's motions for appointment of counsel and for an

26  evidentiary hearing, and DENIES the petition.

27  ///

28  ///

1

*__Legal Standard__*

2      Magistrate Judge Major set forth the correct legal standard governing this Court's review

3 of Nogales' habeas corpus petition.  Under AEDPA, a habeas petition will not be granted with

4 respect to any claim adjudicated on the merits by the state court unless the adjudication: (1)

5 resulted in a decision that was contrary to, or involved an unreasonable application of clearly

6 established federal law; or (2) resulted in a decision that was based on an unreasonable

7 determination of the facts in light of the evidence presented at the state court proceeding.  28

8 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002).  In deciding a state prisoner's habeas

9 petition, a federal court is not called upon to decide whether it agrees with the state court's

10 determination; rather, the court applies an extraordinarily deferential review, inquiring only

11 whether the state court's decision was objectively unreasonable.  *Yarborough v. Gentry*, 540 U.S.

12 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).

13      Where a petitioner challenges, on due process grounds, the sufficiency of the evidence

14 used to obtain a state conviction, he "faces a heavy burden."  *Boyer v. Belleque*, 659 F.3d 957, 964

15 (9th Cir. 2011).

16
> When we assess a sufficiency of evidence challenge in the case of a state prisoner
> seeking federal habeas corpus relief subject to the strictures of AEDPA, there is a
> double dose of deference that can rarely be surmounted.  The *Jackson v. Virginia*
> standard is itself deferential, as it only permits relief when "no rational trier of fact"
> could have found the elements necessary for guilt satisfied beyond a reasonable
> doubt.  *Jackson*, 443 U.S. at 324.  AEDPA adds a second level of deference, as it is
> not enough if we conclude that we would have found the evidence insufficient or
> that we think the state court made a mistake.  Rather, the state court's application of
> the *Jackson* standard must be "objectively unreasonable" to warrant habeas relief
> for a state prisoner.

17

18

19

20

21

22 *Id*. at 964-65.

*__Motion for Evidentiary Hearing and for Appointment of Counsel__*

23      Nogales sought an evidentiary hearing "so that this Court can fully see and comprehend ...

24 aspects of the case to its full potential."  [Doc. No. 9, p. 3.]  Magistrate Judge Major set forth the

25 correct legal standard governing evidentiary hearings.  In order to determine whether to grant an

26 evidentiary hearing, the court must first "determine whether a factual basis exists in the record to

27 support the petitioner's claim."  *Insyxiengmay v. Morgan*, 403 F.3d 657, 669 (9th Cir. 2005)

28 (citing *Baja*, 187 F.3d at 1078).  If not, and an evidentiary hearing would otherwise be appropriate,

the court must "ascertain whether the petitioner has 'failed to develop the factual basis of the claim in State court.'" *Id*. at 669-70.  A failure to develop the factual basis of a claim in state court implies "some lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *See Williams v. Taylor*, 529 U.S. 420, 432 (2000).  The Supreme Court has said that "[d]iligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Id*. at 437.

In the present case, a sufficient factual basis exists in the trial transcripts and other records before the Court to resolve the merits of Nogales' claim.  *See Insyxiengmay*, 403 F.3d at 669-70. In arguing there is insufficient evidence to support the convictions, Nogales cites to the state court record, identifying evidence he contends is contrary to the jury's finding of guilt.  Nogales identifies no facts outside the record.  Instead, he essentially asks this Court to make a *de novo* factual determination based upon the evidence presented in state court.  Under these circumstances, the Court DENIES Nogales' motion for an evidentiary hearing.

Furthermore, Nogales has not demonstrated the need for appointment of counsel.  The Sixth Amendment right to counsel does not extend to federal habeas corpus actions by state prisoners.  *McCleskey v. Zant*, 499 U.S. 467, 495 (1991).  However, financially eligible habeas petitioners seeking relief pursuant to 28 U.S.C. § 2254 may obtain representation whenever the court "determines that the 'interests of justice so require.'" 18 U.S.C. § 3006A(a)(2)(B); *Terrovona v. Kincheloe*, 912 F.2d 1176, 1181 (9th Cir. 1990).  Unless the court conducts an evidentiary hearing on the petition, the appointment of counsel is discretionary.  *Terrovona*, 912 F.2d at 1177. "Indigent state prisoners applying for habeas relief are not entitled to appointed counsel unless the circumstances of a particular case indicate that appointed counsel is necessary to prevent due process violations." *Chaney v. Lewis*, 801 F.2d 1191, 1196 (9th Cir. 1986).  Here, the legal claim is not particularly complex and Nogales has more than adequately presented the factual and legal bases for his claims.  Because the claim of insufficiency of the evidence was also raised before the state courts, the Court can rely upon the transcripts and record of proceedings. Therefore, the Court DENIES Nogales' motion for appointment of counsel.

11cv2146

***Factual and Procedural Background***

The factual and procedural background of this matter is set forth in Magistrate Judge Major's R&R. The Court acknowledges Nogales' objections to the accuracy of the state court's findings of fact[1], and will discuss the additional facts Nogales relies upon in the analysis of his claims below. However, the following facts from the California Court of Appeal's opinion present a background for the Court's analysis:

**a. The June 22, 2007 Shootings**

On June 22, 2007, Karina Lopez was in a car in an alley. Lopez saw four men in the alley, one of whom was yelling at a fifth man. According to Lopez, one of the men from the group of four struck the fifth man in the head with a bottle. Lopez ducked down in the car. Shortly thereafter, she heard two gunshots.

A second witness, Ivet Sandoval, identified Carrasco in court as having been present in the alley during the June 22 shootings. Sandoval also testified that she had previously identified Nogales from a series of photographs as having been present in the alley and having fled the scene with a black gun tucked in his waistband. Carrasco's DNA was discovered on a bottle found at the scene of the June 22 shootings. Cartridge cases that matched the gun used in the murders charged in counts 3 and 4 [the July 8, 2007 shootings] were found at the scene of the June 22 shootings.

**b. The July 8, 2007 Shootings**

Just after midnight on July 8, 2007, several members of the Perez family and their friends were standing outside the Perez home, talking. A white pickup truck passed slowly by the Perez residence, made a U-turn at a cross street, and slowly approached the Perez residence again. Inside the pickup truck were the driver and at least one passenger. As the truck approached the Perez residence, it began driving even more slowly. The driver's side of the truck was closest to the Perez residence. The driver of the truck shouted through his open window, "Paradise Hills. Paradise Hills. P.H.." The driver also asked, "Where you from?" The driver appeared to be attempting to start a fight. Frank Perez, who was standing close to the truck, angrily responded, "Get out of here." The passenger door of the truck then opened, and the passenger began shooting at the people standing outside the Perez home. Both Frank Perez and his brother, John Perez, died from gunshot wounds to their heads.

At approximately 3:30 a.m., police saw Carrasco at a gas station standing next to a white pickup truck. Police detained Carrasco and his girlfriend, Janelle Greed, who was in the truck. Several people who had been outside the Perez residence at the time of the shootings, including Rene Perez, were taken to the gas station and asked whether they could identify Carrasco as one of the perpetrators of the Perez murders. Rene Perez told police, "Sure looks like him . . . ." A second

---

[1]Nogales does not directly challenge the accuracy of any fact contained in the Court of Appeal's opinion. Instead, Nogales argues the statement of facts is incomplete and fails to consider other exculpatory evidence presented at trial which demonstrates he could not have been the shooter on July 8, 2007. That evidence is described below.

1      eyewitness, Blanca Avalos, told police that Carrasco was a "good candidate."

2           While police were detaining Carrasco at the gas station, they learned that
       Carrasco had just dropped off Nogales at Nogales's apartment.  At approximately
3      6:00 a.m. that morning, police went to Nogales's apartment, arrested him , and
       found the firearm that was used in both the June 22 shootings and the July 8
4      murders.

5                c. Gang Evidence

6           The Paradise Hills criminal street gang has approximately 48 members.
       Carrasco and Nogales are active members of the gang.  The July 8 murders were
7      committed in the territory of a gang called the "Lomita Village 70s."  The Paradise
       Hills gang and the Lomita Village 70s gang have a long standing rivalry.

8
            2. The defense
9
            Carrasco presented the testimony of several eyewitnesses who had not
10     identified him at the gas station on the night of the murders.  Carrasco also testified
       at trial.  Carrasco admitted that he had been driving his girlfriends's mother's white
11     pickup truck on the night of the murders.  Carrasco also admitted that he was a
       member of the Paradise Hills gang, that he was close friends with Nogales, and that
12     he had spent the evening of the murders with Nogales at a party.  Carrasco denied
       having driven the white pickup truck near the time of the murders.  Nogales
13     presented no witnesses in his defense.

14     [Lodgment No. 7 at 2-6.]

15          On April 21, 2008, the San Diego County District Attorney filed an amended information

16     charging Nogales with two offenses related to the June 22, 2007, incident.  The information also

17     charged Nogales with five offenses related to the July 8, 2007, incident, two counts of murder, a

18     violation of Penal Code § 187(a) (counts three and four), one count of shooting at an inhabited

19     dwelling, a violation of Penal Code § 246 (count five), and two counts of illegal possession of a

20     firearm, violations of Penal Code § 12021(d) and (e) (counts six and seven).  [Lodgment No. 1,

21     vol. 1 at 0042-49.]  As to all seven counts, the amended information alleged the crimes were

22     committed for the benefit of, at the direction of, and in association with a criminal street gang,

23     within the meaning of Penal Code sections 186.22(b)(1), (b)(4) and (f).  *Id*.  As to counts one and

24     two, the amended information alleged that Nogales had personally used a firearm, within the

25     meaning of Penal Code § 12022.5(a), had personally inflicted great bodily injury, within the

26     meaning of Penal Code § 12022.7(a) and had committed the crimes for the benefit of, at the

27     direction of, or in association with a criminal street gang and with the specific intent to promote,

28     further, or assist in criminal conduct by the gang, within the meaning of Welfare and Institutions

Code § 707(d)(2)(C)(ii).  Id.  As to counts one, three, four and five, the amended information alleged Nogales was a principal in the offenses, and at least one principal personally used a firearm causing great bodily injury, within the meaning of Penal Code §§ 12022.53(d) and (e)(1). *Id.*  As to counts three and four, the amended information alleged Nogales was 14 years or older when he committed the offenses, within the meaning of Welfare and Institutions Code § 707(d)(2)(A).  Finally, the amended information charged the special circumstances allegations that, if convicted of counts three and four, the defendants would be convicted of more then one first or second degree murder in the same proceeding, within the meaning of Penal Code § 190.2(a)(3).  *Id.*

The trial court granted a motion to sever the charges related to the June 22, 2007, crimes from the charges related to the July 8, 2007, crimes.  [Lodgment No. 6 at 7.]  Nogales also successfully moved to have the possession of a firearm charge bifurcated from the murder and shooting at an inhabited dwelling charges.  *Id.*

A jury trial was held on counts three, four (the two murder charges) and five (the shooting at an inhabited dwelling charge).  *Id.*  During deliberations, the jury told the trial judge they were deadlocked on whether Nogales was guilty of first degree murder.  *Id.*  In response, the judge granted the prosecution's request to dismiss the first degree murder charges and the special circumstances allegations.  The jury thereafter found Nogales guilty of two counts of second degree murder (counts three and four) and one count of shooting at an inhabited dwelling (count five.)  [Lodgment No. 1, vol. 3 at 0708-10.]  The jury also found the gang and gun allegations true. *Id.*  Counts six and seven (unlawful possession of a firearm) were tried to the court, and Nogales was found guilty.  *Id.* at 0711.  He was sentenced to eighty years-to-life imprisonment.  *Id.* at 0716.

Nogales appealed his conviction and sentence to the California appellate court, which affirmed the conviction.  [Lodgment Nos. 3-5, 6.]  Nogales thereafter filed a Petition for Review in the California Supreme Court, which was also denied.  [Lodgment Nos. 7 & 8.]  Thereafter, Nogales timely filed the current petition.

### *State Court Decision*

Because the California Supreme Court denied the petition for review without citation of authority, this Court "looks through" to the state appellate court decision denying the claim as the basis for its analysis. *Ylst v. Nunnemaker*, 501 U.S. 797, 805-06 (1991).  The California Court of Appeal rejected Nogales' claim of insufficiency of the evidence as follows:

> *(ii) Substantive law*
>
> "Second degree murder is the unlawful killing of a human being with malice aforethought, but without the additional elements that it be willful, deliberate and premeditated, which are required for first degree murder. [Citations.]  (*People v. Superior Court (Costa)* (2010) 183 Cal.App.4th 690, 697.)
>
> "The elements of a violation of section 246 are '(1) acting willfully and maliciously, and (2) shooting at an inhabited house. [Citation.]'  [Citation.]" (*People v. Hernandez* (2010) 181 Cal.App.4th 1494, 1501.)
>
> **b.  Application**
>
> Nogales's primary argument in support of his insufficiency claim is that there is a lack of evidence that he was present in the truck that was used in the murders at the time of the murders.  While the evidence on this point is far from overwhelming, we conclude there is sufficient evidence from which the jury could have reasonably inferred that Nogales was present in the truck used to commit the murders at the time of the murders, and that he was, in fact, the shooter.
>
> Most significantly, police found Nogales in possession of the murder weapon just a few hours after the commission of the murders.  *(See People v. DePriest* (2007) 42 Cal.4th 1, 45 ["The jury could readily conclude that defendant had the murder weapon because he was the murderer"].)  Further, Nogales's DNA was found on the murder weapon.  While a second unidentified individual's DNA was also found on the gun, Nogales was the primary contributor of the DNA found on the gun. [footnote 19 omitted.]  Moreover, the police found a single fingerprint on the murder weapon.  That sole fingerprint matched Nogales's fingerprint.  In addition, as discussed in part II.A.2, *ante*, the People presented evidence that Nogales possessed and fired the murder weapon during a separate shooting approximately two weeks before the murders.  (*See People v. Carpenter*, *supra*, 15 Cal.4th at pp. 361-362 ["The ballistics evidence showed that the same gun was used each time, strongly indicating that the same person committed each crime.  Thus, evidence that defendant was the gunman in one incident was evidence that he was the gunman in the other."].)
>
> The circumstances under which police found the murder weapon are also consistent with Nogales's guilt.  Police found the murder weapon in a pile of personal belongings, including a white t-shirt, next to a couch in the front room of Nogales's apartment, suggesting that the gun had been placed there at the same time as the personal belongings.  [footnote 20 omitted.]  Sara Perez, who was present at the scene of the murders, testified that she saw two figures wearing white t-shirts in the truck that was used in the murders.  When police confronted Nogales and ordered him out of his apartment at gunpoint, Nogales appeared "stunned" and

began to reach toward the area where police later found the gun.

Nogales claims that it is "entirely plausible" that another person gave Nogales the gun after the shooting. [footnote 21 omitted.] However, the jury could have reasonably rejected this theory in light of evidence that Nogales was, "the predominant DNA contributor to the gun," the only fingerprint found on the murder weapon belonged to Nogales, and Nogales had possess and fired the murder weapon approximately two weeks before the murders. In any event, it is the jury's role, not the reviewing court's, to determine whether circumstantial evidence is amendable to a reasonable interpretation that suggests innocence. (*See People v. Rodriguez, supra*, 20 Cal.4th at p. 11 ["Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court[,] which must be convinced of the defendant's guilt beyond a reasonable doubt"].)  [footnote 22 omitted.]

Nogales's possession of the murder weapon was not the only evidence of his guilt. The People presented overwhelming evidence both that the murder was committed by a member of the Paradise Hills gang (see pt. III.A.4.c, *ante*), and that Nogales was active in the Paradise Hills gang. A gang detective testified that Nogales was one of approximately 20 "riders," who were the most likely gang members to have committed the charged offenses.

In addition, as noted in part III.A.4.c, *ante*, the People presented strong evidence that Carrasco was the driver of the truck used to commit the murders, and considerable evidence linking Carrasco and Nogales. Carrasco testified at trial that he and Nogales were "very close friend[s]." Nogales spent the night preceding the murders with Carrasco at Carrasco's girlfriend's house. Nogales and Carrasco also spent much of the day of the murders together. Nogales was with Carrasco at a party approximately two and a half miles from the scene of the murders on the night of the murders. Further the People presented evidence that Carrasco left the party in a white pickup truck with two other persons near the time of the murders, and Rene Perez testified that the murders were committed by a passenger riding in a white pickup truck. Carrasco also gave Nogales a ride home from the party, after the murders.

Finally, the record contains physical evidence linking Nogales to the murders. Nogales had a small amount of gunshot residue on his hand. An expert testified that a person may come into contact with gunshot residue by firing a firearm, being near a weapon that is being discharged, or handling a weapon that has been fired. Nogales's fingerprints were found on the bed of the white pickup truck driven by Carrasco, on the passenger side. The location of the fingerprints on the truck was consistent with Rene Perez's testimony that the shooter emerged from the passenger side of the truck and began shooting. While far from conclusive, this physical evidence tended to corroborate the other evidence that Nogales shot and killed Frank and John Perez. [footnote 23.]

> [footnote 23: Nogales also argues that there is insufficient evidence in the record to support his conviction on counts 3, 4 and 5 pursuant to an aiding and abetting theory. In light of our conclusion that there is sufficient evidence in the record that Nogales was guilty of the charged offenses as the shooter, we need not consider this contention.]

Accordingly, we conclude that there is sufficient evidence in the record to support the jury's verdicts finding Nogales guilty of two counts of second degree

murder (§ 187, subd. (a)) and one count of shooting at an inhabited residence (§ 246).

[Lodgment No. 6 at 44-48.]

### *Discussion*

Nogales objects to Magistrate Judge Major's R&R, arguing it fails to take into account the conflicting evidence contained in the record.  The *Jackson* sufficiency of the evidence inquiry is conducted "with explicit reference to the substantive elements of the criminal offense as defined by state law."  *Boyer*, 659 F.3d at 965 (citing *Jackson*, 443 U.S. at 324, n.16.  As noted in the R&R, the state court correctly outlined the elements of the crimes of second degree murder (an unlawful killing with malice aforethought but which was not willful, deliberate and premeditated) and shooting at an inhabited dwelling (willfully and maliciously shooting at an inhabited house).  *See People v. Superior Court (Costa)*, 183 Cal. App. 4th 690, 697 (2010); *People v. Hernandez*, 181 Cal. App. 4th 1494, 1501 (2010).

In his objections, Nogales points to several specific facts that contradict the evidence on which the California Court of Appeal and Magistrate Judge Major relied in rejecting his claim.  In particular, Nogales argues as follows:

- The fact the gun found in his apartment was also used in the June 22 shooting does not establish Nogales was the shooter on July 7 because there was no evidence showing Nogales possessed the weapon in the days leading up to the July 7 shooting.

- The fact Nogales' fingerprints and DNA were on the murder weapon shows only that Nogales, at some point, picked up that gun.  The fingerprints were not near the trigger, as one would expect if Nogales actually fired the weapon.  In addition, although it was too small a quantity to allow law enforcement to process, there was another person's DNA on the gun.

- The fact there was gunshot residue on Nogales' hand showed only that he came into contact with the gun (or with someone else who transferred the residue to him).  The residue was found on Nogales' non-dominant left hand, whereas if he had fired the weapon, one would expect the residue to have been on his dominant right hand.

11cv2146

The expert who testified at trial acknowledged the residue is easily transferable by contact such as a hand shake.

- A witness at trial testified that she saw two figures in the Silverado truck, both of whom were wearing white shirts.  However, there were photographs and testimony showing Nogales wore a dark blue shirt the entire day and night of July 7.

- The fact the murder was committed by someone in the Paradise Hills gang does not help to identify Nogales as the shooter because there were many other members of the gang both at the party in Spring Valley and driving around with Carrasco in the Silverado truck that evening.

- Witness Adriana Orozco testified that Nogales was not one of the people she saw leave the party with Carrasco.

- Witness Rene Perez said she saw the shooter's head over the top of the truck's cab. Testimony showed the cab of the truck was 5 feet 10½ inches high, but Nogales is only 5 feet 7 inches tall.  Therefore, he could not have looked over the top of the cab.  In addition, his right hand fingerprints were found on the window of the truck, but if he were standing and holding onto the window for support while he shot, he would have held on with his non-dominant left hand.

Were the Court reviewing Nogales' conviction on a motion for new trial, on direct appeal, or without AEDPA's "unreasonable application" extra layer of deference, the Court would find these facts more persuasive.  However, these facts, when viewed in combination with the other evidence presented by the prosecution at trial, do not render objectively unreasonable the state court's determination that a rational jury could have found that there was sufficient evidence of guilt beyond a reasonable doubt.  *Boyer*, 659 F.3d at 965.

"Speculation and conjecture cannot take the place of reasonable inferences and evidence – whether direct or circumstantial ...." *Juan H. v. Allen*, 408 F.3d 1262, 1279 (9th Cir. 2005).  All of the facts now cited by Nogales were before the jury for its consideration, and the Court agrees that based upon these additional facts, the jury reasonably could have found he was not guilty of second degree murder or shooting at an inhabited dwelling.  The jury could have concluded

1    Nogales never left the party and, instead, that another individual left the party with Carrasco in the

2    Silverado truck.  The jury could have concluded that someone else shot and killed Frank and John

3    Perez and merely gave the gun to Nogales for safe keeping afterwards.

4          However, these are factual determinations within the jury's province.  The fact the gun

5    used in the July 8 shooting was also used in the June 22 shooting, does not prove Nogales was the

6    shooter. However, the jury was entitled to infer Nogales was the shooter based upon his possession

7    of the weapon.  *People v. DePriest*, 42 Cal. 4th 1, 45 (2007).  The fact Nogales' fingerprint was not

8    near the trigger of the gun does not mean he did not pull the trigger, because he could have wiped

9    the fingerprints off that portion of the weapon.  Although the gunshot residue could have been

10   transferred to Nogales' left hand by some other means (such as taking possession of the gun from

11   someone else or merely shaking hands), the jury reasonably could have concluded it was there

12   because Nogales had recently fired a gun.  The fact there are photos of Nogales wearing a blue

13   shirt the day and night of the shooting does not preclude the jury from concluding he was also

14   wearing a white shirt underneath, especially in light of the fact a white t-shirt was found on top of

15   the gun.  The jury also could have discredited the witness's testimony regarding what the shooter

16   was wearing.  The jury could have concluded Ms. Orozco's testimony, that Nogales did not leave

17   the party, was incorrect or simply false.  The jury also could have concluded that Nogales' height

18   did not preclude him from shooting over the top of (or around the side of) the cab of the truck.  In

19   short, none of the additional facts upon which Nogales relies shed doubt upon the reasonableness

20   of the inferences the jury made from the evidence presented at trial.  Those additional facts do not

21   render the evidence purely speculative, and do not render the jury's verdict irrational.

22         In applying the highly deferential standard applicable on habeas review of claims of

23   insufficiency of the evidence under *Jackson* and AEDPA, the Supreme Court has acknowledged

24   that "[b]ecause rational people can sometimes disagree, the inevitable consequence of this settled

25   law is that judges will sometimes encounter convictions that they believe to be mistaken, but that

26   they must nonetheless uphold."  *Cavazos v. Smith*, 132 S. Ct. 2 (2011).  The additional evidence to

27   which Nogales refers sheds doubt upon his guilt.  However, the state court's application of the

28   *Jackson* standard was not "objectively unreasonable."

1

### *Certificate of Appealability*

2        Pursuant to Rule 11 of the Rules Governing Section 2254 cases, the "district court must

3   issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A

4   certificate of appealability is authorized "if the applicant has made a substantial showing of the

5   denial of a constitutional right."  28 U.S.C.A. § 2253(c)(2) (West Supp. 2001). When a petitioner's

6   claims have been denied on their merits, as here, a petitioner can meet the threshold "substantial

7   showing of the denial of a constitutional right," by demonstrating that: (1) the issues are debatable

8   among jurists of reason; or (2) that a court could resolve the issues in a different manner; or (3)

9   that the questions are adequate to deserve encouragement to proceed further.  *Lambright v.*

10  *Stewart*, 220 F.3d 1022, 1024-25 (9th Cir. 2000), citing *Slack v. McDaniel*, 529 U.S. 473 (2000),

11  and *Barefoot v. Estelle*, 463 U.S. 880 (1983).  Upon review, the Court believes Nogales' claims

12  presents questions which are debatable among jurists of reason.  Therefore, the Court GRANTS a

13  certificate of appealability.

14

### *Conclusion*

15       For the reasons set forth herein, the Court DENIES Nogales' motion for appointment of

16  counsel, DENIES Nogales' motion for an evidentiary hearing, REJECTS Nogales' objections to

17  the R&R, ADOPTS IN FULL the R&R, DENIES the petition for a writ of habeas corpus, and

18  GRANTS a certificate of appealability.

19       **IT IS SO ORDERED**.

20  **DATED:  May 10, 2012**

21                                             **IRMA E. GONZALEZ, Chief Judge**

22                                             **United States District Court**

23

24

25

26

27

28

11cv2146